**Steven J. MOSES, Plaintiff,**

v.

**TOWN OF WYTHEVILLE, VIRGINIA, et al., Defendants.**

**Civil Action No. 96–0106–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

March 21, 1997.

---

Elna Gay Leonard, Abingdon, VA, for plaintiff.

Robert Wayne Austin, Johnson, Scyphers & Austin, P.C. , Abingdon, VA, for defendants.

## OPINION

JONES, District Judge.

A former police officer challenges a municipal regulation which required him to resign from the police force in order to become a candidate for partisan elective public office. I find that the rule is not unconstitutional as applied to the plaintiff and grant summary judgment in favor of the defendants.

### I

Steven J. Moses, a police officer employed by the Town of Wytheville, Virginia, decided in 1995 to seek election as sheriff of Bland County. The rules of conduct of the police department, adopted in 1992, restricted political activity by police officers, and in particular, prohibited officers from "[b]ecoming candidates for or campaigning for a partisan elective public office."

Moses was denied a leave of absence from his job and by letter to him dated March 15, 1995, the director of public safety of the town informed him that because of the rule, he would be required to resign his job in order to run for the office. Moses decided to resign, effective June 30, 1995. He lost the election and thereafter filed the present suit, in which he claims that the application of the rule to him by the town and its officials violated his constitutional right of free expression, as guaranteed by the First Amendment.[1] He has named as defendants the town, its manager and his police superiors.

The parties now have filed cross motions for summary judgment.

### II

Moses concedes, as he must, that a state may validly restrict the political activity of public employees. In *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Supreme Court held that a state could prohibit certain public employees from becoming "candidate[s] for nomination or election to any paid public office." *Id.* at 606, 93 S.Ct. at 2912. On the same day, the Court held that Congress had the power to forbid a federal employee from "becoming a partisan candidate for, or campaigning for, an elective public office." *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973). Similar restrictions have been upheld with respect to police officers. *Jenkins v. Town of Bryson City*, No. 91–1054, 1991 WL 204912 (4th Cir. Oct. 11, 1991) (unpublished); *Otten v. Schicker*, 655 F.2d 142 (8th Cir. 1981); *Naccarati v. Wilkins Township*, 846 F.Supp. 405 (W.D.Pa.1993); *Krisher v. Sharpe*, 763 F.Supp. 1313 (E.D.Pa.), *aff'd*, 944 F.2d 897 (3d Cir.1991).

The plaintiff contends, however, that the rule preventing an officer from running for office is invalid in its application to him because Bland County, the situs of the elective office he sought, does not encompass the

---

**1.** He also alleged in his complaint that he had earlier criticized the conduct of Lt. Ricky Arnold, one of his superior officers and a defendant in this case. He now disclaims any claim based on the right to speak on matters of public concern, as described in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

Town of Wytheville, and thus the legitimate interest of the town in promoting partisan neutrality does not overcome his interest, protected by the First Amendment, in political expression. Since the residents of the town would not vote in his election, Moses argues that the town cannot "credibly claim that its legitimate governmental interest is in keeping officers from using their positions of employment to influence others." (Pl.'s Br. Supp. Summ. J. at 8.) [2]

The defendants, on the other hand, established by affidavit that Bland County is located only ten to twelve miles from the Town of Wytheville, and that many residents of Bland County visit the town for employment, entertainment, or business.

Moses also claims that on at least one prior occasion the police department did not apply this rule to a police officer who, while not seeking political office himself, "campaigned" for a candidate for sheriff of Wythe County, the county in which Wytheville is located.[3]

I uphold the application of the rule to the plaintiff. The fact that the rule was not limited to candidacies within the Town of Wytheville or Wythe County does not preclude its support of legitimate governmental interests. The close geographical proximity of the plaintiff's law enforcement duties to the site of his sought after partisan office establishes a valid basis for the restriction. The police department certainly can desire that its partisan neutrality be clear to visitors to the town, as well as residents.[4] Similarly, it is reasonable to view a partisan political campaign by an officer as a potential disruption to discipline and morale, even if none of the other officers are voters. Police officers are likely to have friends and relatives in a neighboring community, and are affected by the rough and tumble of a campaign located there, even if they are not voters.

Nonpartisan enforcement of the law is an important value, and the state and its municipalities ought to be given considerable leeway in fashioning means to insure that goal. Perhaps, as the plaintiff asserts, his candidacy could have been accommodated by the police department without causing him to resign from his job. However, so long as the restriction is narrowly drawn, and is supported by legitimate governmental interests, the municipality's decision should not be second-guessed.

Even assuming that the plaintiff could show that another police officer was allowed to "campaign" for a candidate for partisan office, there has been no violation of the plaintiff's constitutional rights.

In the first place, it is not clear that the other officer's conduct violated the police department's rules. The rules specifically allowed police officers to express opinions as individuals, privately and publicly, on political issues and candidates, to attend political conventions, rallies, fund-raising functions and similar political gatherings, to hold membership in a political party and participate in its functions to the extent consistent with law and with the department's rules. The plaintiff claims that handing out political litera-

---

2. Although not established by affidavit, Moses also contends that he was the only officer on the force who actually lived in Bland County; this fact, he asserts, would have minimized any possible friction with his fellow officers because of his candidacy. (Pl.'s Br. Supp. Summ. J. at 9.)

3. The complaint alleged that "other employees" had engaged in activities prohibited by the policy in question, but it appears that this is the only instance relied upon. It is referred to in the plaintiff's brief, but not established by affidavit. In particular, it is claimed that the other officer had "worked the polls, handing out materials for [the candidate]." (Pl.'s Br. Supp. Summ. J. at 3.)

4. At oral argument, counsel for Moses argued that the town would have to prove that its justifications for the rule were considered at the time of its adoption. Such an inquiry into the contemporaneous motives of policymakers is not warranted here. Moses' claim, stated either in terms of the First Amendment or the Equal Protection Clause, is not entitled to such a heightened level of scrutiny. *Brazil–Breashears v. Bilandic*, 53 F.3d 789, 792–93 (7th Cir.1995). In the absence of an infringement of a fundamental right or evidence of discrimination against a particular group, courts will not probe into legislative intent. *See Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); *Fraternal Order of Police Hobart Lodge 121, Inc., v. City of Hobart,* 864 F.2d 551 (7th Cir.1988). As neither of these concerns are implicated in this case, I will decline to undertake any inquiry into the motives of the town's policymakers in 1992.

ture at the polls violated the provision of the rules which prohibited officers from "[b]ecoming candidates for *or campaigning for* a partisan elective public office." But "campaigning for" in the rule refers to an "office" and not a "candidate." A better reading of the rule is that "campaigning for" is simply another prohibition against seeking office, to ensure that the restriction is not defined too technically to refer only to one who has formally qualified as a candidate. It would hardly make sense to permit a police officer to be a member of a political party, attend rallies, and publicly support a partisan candidate, and, in the same rules, forbid the officer from "campaigning for" his candidate of choice.

In any event, regardless of the classification of the other officer's activities, there is an understandable difference from the point of view of the police department between an officer who supports a partisan candidate, and one who goes further and actually becomes a candidate. The danger that an officer who is also a candidate will not enforce the law in an evenhanded manner is considerably greater than the risk from an officer who is merely a supporter. Due to the candidate's high visibility and the focus of attention, actual political candidacy is different in kind, not merely in degree, from other types of political activity.

The town was thus justified in treating Moses differently than his fellow officer who actively supported a candidate, even though that candidate ran in Wythe County.

Under the circumstances, I uphold the application of the rule requiring the plaintiff to resign in order to run for office and will grant summary judgment to the defendants.[5]

An appropriate final judgment will enter.

---

**5.** The defendants also argue that since the plaintiff voluntarily resigned his position, his case is "moot." While a voluntary resignation can bar a public employee's due process claim, based on an assertion of a property interest in the employment, *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167, 173 (4th Cir.1988), the waiver of a First Amendment claim is more difficult to find. *See D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Leonard v. Clark*, 12 F.3d 885 (9th Cir.1994). In any event, in view of my determination of the merits, I do not reach this issue.